# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **HOMEVESTORS OF AMERICA, INC.,** | ) |
| Plaintiff, | ) Case No. 1:16-cv-00405 |
| vs. | ) **COMPLAINT** |
| **MITCHELL D. PAINTER,** individually, and **RENTCLIFTON.COM, INC.,** | ) |
| Defendants. | ) |

Plaintiff, HomeVestors of America, Inc. ("HomeVestors"), by and through its undersigned counsel, hereby files this Complaint against Defendants, Mitchell D. Painter ("Painter") and Rentclifton.com, Inc. ("Rentclifton"), (collectively "Defendants"), seeking injunctive and other relief, and in support thereof states as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive relief and money damages stemming from Defendants' trademark infringement and related claims of unfair competition arising under the trademark and unfair competition laws of the United States; for unfair competition, trademark infringement, and unfair and deceptive trade practices under the statutory and common laws of Ohio; and for unjust enrichment.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) over the claims for relief arising under the Lanham Act, 15 U.S.C. § 1121. The Court has original jurisdiction over the unfair competition claims herein under

the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 *et seq*.

3. This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a) because these claims arise out of the same transaction and occurrences giving rise to the federal Lanham Act claims and are so related to those claims as to be part of the same case or controversy.

4. This Court has personal jurisdiction over Defendants because they reside in Ohio and operate, conduct, engage in, or carry on a business in Ohio or have an office or agency in Ohio wherein they committed the tortious conduct alleged herein in the state of Ohio.

5. Defendants are subject to personal jurisdiction in this Court because the acts that are the subject of HomeVestors' claims, including trademark infringement and unfair competition were committed by Defendants, in part, in the state of Ohio in this District.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this District and are residents of Ohio. Venue is also proper because a substantial part of the events giving rise to the claims asserted in this action occurred in this District.

## THE PARTIES

7. Plaintiff, HomeVestors, is a Delaware corporation with is principal place of business at 6500 Greenville Avenue, Suite 400, Dallas, TX 75206.

8. On information and belief, Painter is an individual residing at 274 Senator Place #17, Cincinnati, Ohio 45220.

9. Defendant, Rentclifton, is a corporation organized and existing under the laws of the State of Ohio and can be served through its registered agent, James Thomas Hodges.

## FACTUAL BACKGROUND

**A.     HomeVestors' Business.**

10. HomeVestors began franchising its business in 1996. HomeVestors has over 600 franchisees across 44 states that operate under strict codes and systems to ensure high ethical standards and responsible business practices. Over the years, HomeVestors and its franchisees have bought more than 60,000 houses.

11. HomeVestors is known as the WE BUY UGLY HOUSES® people and is the number one buyer of houses in the United States. HomeVestors franchisees buy homes that are difficult to sell and pay cash to owners in challenging situations. HomeVestors franchisees rehabilitate the houses and then sell or lease the homes. This process improves neighborhood aesthetics and provides opportunities for first-time homebuyers, other homebuyers, and renters.

12. HomeVestors offers low-cost franchising opportunities to investors seeking to enter the business. Its unique business model includes a proprietary software system used in evaluating the potential value of single-family homes for purchase and repair. HomeVestors and its franchisees also employ a mass advertising campaign based on high-impact billboards, nationwide television commercials, and widespread Internet advertising that has achieved nearly universal market awareness for HomeVestors' trademark portfolio, which is discussed in detail below. HomeVestors also utilizes a

direct-selling program that assists franchisees in identifying buyers or investors who may already have a vested interest in improving the relevant neighborhoods.

13. HomeVestors has received numerous honors and awards. In 2015, HomeVestors was recognized as the 19th fastest growing franchise by Entrepreneur Magazine. In 2016, HomeVestors was recognized as number 91 in the Franchise 500 by Entrepreneur Magazine. Furthermore, in 2015, SMU Cox School of Business named HomeVestors as number 28 in the "Dallas 100" fastest-growing private companies based in Dallas. HomeVestors was the only home buying franchise on each of those lists. Also in 2015, and for the tenth consecutive year, HomeVestors was named to Franchise Business Review's "Top 50 Franchises," a distinction awarded to franchisors with the highest level of franchisee satisfaction. HomeVestors has built substantial goodwill in its name and business practices among both consumers and its franchisees.

**B. HomeVestors owns substantial trademark rights through its significant use in commerce of its trademarks.**

14. HomeVestors possesses extensive valuable rights in its intellectual property, including a family of U.S. trademarks listed in the chart attached hereto as Exhibit A ("HomeVestors' Family of Marks").

15. HomeVestors owns and has used the Ugly Houses Marks (defined below) since at least as early as 2000 and has built substantial brand-name recognition through the use of these marks. Through continuous and exclusive use in commerce, HomeVestors' Ugly Houses Marks have achieved incontestable status. Specifically, the following marks have become widely recognized in the industry, and HomeVestors has built significant goodwill in those marks: WE BUY UGLY HOUSES® & Design (Reg. No. 2,761,385); WE BUY UGLY HOUSES® (Reg. No. 3,099,814); COMPRAMOS

CASAS FEAS® (Reg. Nos. 2,988,337 and 2,982,363); WE BUY UGLY HOUSES® (Reg. No. 2,999,705); WE BUY UGLY HOUSES AND MAKE THEM NICE AGAIN® & Design (Reg. No. 2,827,136); UGLY'S OK® Stylized (Reg. NO. 2,797,429); UGLY'S OK® (Reg. No. 2,794,480); WE SELL LUVLY HOUSES.COM® (Reg. No. 3,658,442); THE UGLIEST HOUSE OF THE YEAR® (Reg. No. 3,641,362); THE UGLIEST HOUSE OF THE YEAR® & Design (Reg. No. 3,641,361); THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,350,752); WE BUY THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,307,918); SOLUTIONS FOR UGLY SITUATIONS® (Reg. Nos. 3,188,593 and 3,185,390); UG BUYS UGLY HOUSES® (Reg. No. 2,999,978); and UG BUYS UGLY HOUSES® (Reg. No. 2,935,916). Registration Nos. 2,761,385; 3,099,814; 2,988,337; 2,982,363; 2,999,705; 2,827,136; 2,797,429; 2,794,480; 3,658,442; 3,641,362; 3,641,361; 3,350,752; 3,307,918; 3,188,593; 3,185,390; 2,999,978 and 2,935,916 are collectively referred to as the "Ugly Houses Marks."

16. Over the years, HomeVestors has spent significant amounts of time and resources in developing its brand and maintaining the goodwill it has built in its trademarks. HomeVestors and its network of franchisees have spent over $100 million on advertising over the course of the past 10 years, which includes advertising on the Internet, radio, television, magazines, and billboards seen throughout the country. The HomeVestors brand is readily and widely recognized in the industry and among the general public.

**C. Defendants operate Websites using HomeVestors' Ugly Houses Marks, thereby committing acts of infringement and unfair competition.**

17. On information and belief, Painter and/or Rentclifton conduct business primarily through domain websites that improperly use HomeVestors' registered

trademarks, namely, the domain <buymyhousecincinnati.com> (the "Buy My Domain"), the domain <sellhousefastnowcolumbus.com> (the "Sell Fast Domain"), the domain <sellhousequickcolumbus.com> (the "Sell Quick Domain"), the domain <sellmyhousefastcincinnati.com> (the "Sell My Domain"), the domain <sellyourhousecincy.com> (the "Sell Your Domain"), the domain <thecincinnatihomebuyer.com> (the "The Cincinnati Domain"), <thecincyhousebuyer.com> (the "Cincy Domain"), the domain <thecolumbushousebuyer.com> (the "The Columbus Domain"), and the domain <webuyhousescincinnati.com> (the "We Buy Domain"), (collectively, the "Websites"). The Websites are available to and directed at residents of Ohio and this District and advertise the buying of houses that are difficult to sell. The Websites are direct competitors of HomeVestors and its franchisees.

18. Defendants have used the Ugly Houses Marks and confusingly similar phrases to advertise their real estate services, within online advertisements, the text on the face of the Websites, source code meta tags, URL extensions, and page and blog post tags within the Websites.

19. Counsel for HomeVestors first contacted Painter via letter dated February 7, 2012, requesting Painter cease use of the domain <webuyuglyhousescincinnati.com> (the "Infringing Domain") and all other use of HomeVestors' Ugly Houses Marks from Painter's advertising of real estate services. A true and correct copy of the letter counsel for HomeVestors sent to Painter is attached hereto as Exhibit B.

20. After Painter took no action to comply with HomeVestors' demands to stop use of the Infringing Domain, counsel for HomeVestors filed a Complaint with the

National Arbitration Forum (the "NAF") on October 2, 2012. On November 15, 2012, the NAF issued a decision in favor of HomeVestors, finding Painter's bad faith registration of the Infringing Domain and granting a transfer of the Infringing Domain from Painter to HomeVestors. A true and correct copy of the NAF decision is attached hereto as Exhibit C.

21. On or about November 2015, counsel for HomeVestors became aware of new infringing use of the Ugly Houses Marks by Defendants. Counsel sent a letter to Defendants dated November 25, 2015, again demanding Defendants cease use of the Ugly Houses Marks and enter into an agreement to cease from future infringement. A true and correct copy of the letter dated November 25, 2015 is attached hereto as Exhibit D.

22. Since November 2015, counsel for HomeVestors has communicated repeatedly with counsel for Defendants via letters, emails, and telephone calls, requesting Defendants immediate cessation of all use of the Ugly Houses Marks for an amicable resolution to the issue. Although counsel for Defendants made representations that the infringing use was being removed from the Websites, and some modifications to the Websites were made, Defendants continue to use the Ugly Houses Marks repeatedly throughout the Websites. A true and correct copy of printouts of email communications between counsel for HomeVestors and counsel for Defendants is attached hereto as Exhibit E.

23. On information and belief, on or about January 20, 2016, after Defendants had recent notice of HomeVestors' trademark infringement claims, Defendants published a blog post using HomeVestors' WE BUY UGLY HOUSES trademark within the text of

the post. A true and correct copy of a printout of the blog post is attached hereto as Exhibit F.

24. As recently as March 8, 2016, Defendants used the Ugly Houses Marks within text on the face of the Websites, page titles, page banners, source code, meta tags, URL extensions, keyword tags within blog posts, text within YouTube video postings, business listings, and social media posts advertising Defendants' real estate business. A true and correct copy of images of Defendants' Websites, source code, social media pages, and business listing are attached hereto as Exhibit G, a sample representation of the type of use found within the Websites and online advertising.

**D.  Unless Defendants are enjoined, HomeVestors will suffer irreparable harm for which it has no remedy at law.**

25. Unless Defendants are enjoined, HomeVestors will suffer irreparable harm. Defendants will continue to trade on the goodwill HomeVestors has built in its marks. Defendants will profit unfairly from their trademark infringement, unfair competition, and other wrongs. In advertising for Defendants' business, Defendants will continue to use the trademark terms in which HomeVestors has built substantial goodwill. This use of the Ugly Houses Marks and confusingly similar phrases diverts business that otherwise would belong to HomeVestors and causes initial interest confusion. Moreover, HomeVestors has no ability to control the quality of the services provided by Defendants in conjunction with the Ugly Houses Marks, and therefore, is at risk of irreparable harm for which there is no remedy at law and for which money damages cannot repair.

26. By way of example, if customers of Defendants experience inferior services, they will likely mistakenly attribute that bad experience to HomeVestors and its

franchisees due to Defendants' adoption of the same marks.  This is heightened by Defendants' strategy of providing the same or similar services to the same customer base using the same advertising channels in connection with the same marks.  As established above, these actions are taken intentionally by Defendants as part of a scheme to trade on the goodwill built by HomeVestors through its investment of time, efforts, and advertising in the HomeVestors' Family of Marks.  Defendants are intentionally trading off the goodwill HomeVestors has built up in its marks over years of use and promotion.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

27. HomeVestors incorporates the preceding allegations as though fully set forth herein.

28. Without consent from HomeVestors, Defendants have used in commerce trademarks that are identical and/or confusingly similar to HomeVestors' federally registered Ugly Houses Marks, in connection with the offering of real estate services and/or advertising of such services that are in direct competition with HomeVestors' real estate services, and such uses are likely to cause confusion or to cause mistake or to deceive.

29. Defendants' acts committed in the course of Internet commerce constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, of the Ugly Houses Marks.  As established by the registrations for the marks, the marks are protectable and enforceable against Defendants, HomeVestors is the owner of the marks, and HomeVestors is the senior user of the marks.  Moreover, Defendants' actions have caused a likelihood of confusion and damage to HomeVestors.  In particular,

through the infringing use of the Ugly Houses Marks, Defendants are harming HomeVestors and diverting sales that would otherwise go to HomeVestors. Defendants' use of the Ugly Houses Marks is likely to cause confusion and mistake as to the source of Defendants' services.

30. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

31. The aforesaid acts of trademark infringement have been intentional, willful, and in bad faith.

32. HomeVestors has been and is likely to be damaged in the future by Defendants' infringing and unlawful acts.

33. The acts of Defendants complained of herein have caused and, unless enjoined by the Court, are likely to continue to cause HomeVestors to suffer irreparable harm.

34. HomeVestors is entitled to relief pursuant to 15 U.S.C. §§ 1116, 1117 and 1125.

**SECOND CLAIM FOR RELIEF**
(Federal Unfair Competition and False Designation of Origin)

35. HomeVestors incorporates the preceding allegations as though fully set forth herein.

36. Without consent from HomeVestors, Defendants have used in commerce trademarks that are identical and/or confusingly similar to HomeVestors' Ugly Houses Marks in connection with the offering of real estate services and/or advertising of such services that are in direct competition with HomeVestors' real estate services, and such uses are likely to cause confusion or to cause mistake or to deceive.

37. The aforesaid acts of Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of HomeVestors or HomeVestors' goods, services, or commercial activities with goods, services, or commercial activities that are not of HomeVestors, or as to the origin, sponsorship, or approval by HomeVestors' goods, services, or commercial activities.

38. The aforesaid acts of Defendants constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39. The aforesaid acts of Defendants have been intentional, willful, and in bad faith.

40. HomeVestors has been and is likely to be damaged by Defendants' conduct and unlawful acts.

41. The acts of Defendants complained of herein have caused and, unless enjoined by this Court, are likely to cause HomeVestors to suffer irreparable harm

42. HomeVestors is entitled to relief pursuant to 15 U.S.C. §§ 1116, 1117, and 1125.

## THIRD CLAIM FOR RELIEF
### (Ohio Common Law Unfair Competition)

43. HomeVestors incorporates the preceding allegations as though fully set forth herein.

44. As established above, HomeVestors is the senior user of its marks and enjoys priority over Defendants. HomeVestors' substantial use of these marks in commerce has resulted in the marks being protectable and enforceable. Defendants' use in commerce of the Ugly Houses Marks and confusingly similar marks in connection with competing services constitute infringement of HomeVestors' common-law rights to its marks. Defendants' use of the marks is likely to cause confusion or mistake as to the source of Defendants' services.

45. Without consent from HomeVestors, Defendants have used in commerce trademarks that are identical and/or confusingly similar to HomeVestors' Ugly Houses Marks in connection with the offering of real estate services and/or advertising of such services that are in direct competition with HomeVestors' real estate services, and such uses are likely to cause confusion or to cause mistake or to deceive.

46. Defendants' acts constitute unfair competition and an infringement of HomeVestors' common law rights in the Ugly Houses Marks.

47. Defendants have infringed the Ugly Houses Marks as alleged herein with the intent to deceive the public into believing that the services provided by Defendant are made by, approved by, sponsored by and/or affiliated with HomeVestors.

48. Defendants' acts were committed, and are being committed, with the intent to pass off and palm off HomeVestors' services, and with the intent to deceive and defraud the public.

49. The aforesaid acts of Defendants constitute unfair competition in violation of the common law.

50. The aforesaid acts of Defendants have been intentional, willful, and in bad faith.

51. HomeVestors has been and is likely to continue to be damaged by Defendants' unlawful acts.

52. HomeVestors is entitled to any and all relief authorized by law.

53. The acts of Defendants complained of herein have caused and, unless enjoined by this Court, are likely to cause HomeVestors to suffer irreparable harm.

## **FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

54. HomeVestors incorporates the preceding allegations as though fully set forth herein.

55. Defendants have taken and infringed upon the HomeVestors' Ugly Houses Marks for their own commercial benefit without compensation to HomeVestors. As a result, Defendants have unjustly profited from the goodwill and reputation associated with the HomeVestors' Ugly Houses Marks upon which Defendants unlawfully infringed.

56. As set forth above, Defendants have used the Ugly Houses Marks and HomeVestors' goodwill as an integral step of Defendants' sales of their services. On

information and belief, Defendants have received a direct pecuniary benefit from these unlawful acts. Defendants are therefore unjustly enriched to HomeVestors' detriment. As a result, HomeVestors is entitled to recover its actual damages caused by Defendants' unjust enrichment.

57. HomeVestors is entitled to a full accounting and recovery from Defendants for the benefits and profits it has unjustly received.

## FIFTH CLAIM FOR RELIEF
(Violation of Ohio's Deceptive Trade Practices Act)

58. HomeVestors incorporates the preceding allegations as though fully set forth herein.

59. Defendants' conduct constitutes unfair and deceptive trade practices in violation of Chapter 4165 of the Ohio Revised Code.

60. Defendants have used the Ugly Houses Marks in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' services, or commercial activities with HomeVestors' services or commercial activities, as to the origin, sponsorship, or approval of Defendants' services, or commercial activities by HomeVestors, all in violation of Ohio's Deceptive Trade Practices Act, Chapter 4165 of the Ohio Revised Code.

61. Defendants have engaged in the act of passing off their services as HomeVestors' Ugly Houses Marks' services, in violation of Ohio's Deceptive Trade Practices Act, Chapter 4165 of the Ohio Revised Code.

62. Defendants have competed unfairly and continue to compete unfairly with HomeVestors in violation of Ohio's Deceptive Trade Practices Act, Chapter 4165 of the Ohio Revised Code.

63. Defendants' conduct as described herein has been knowing, deliberate, and willful.

64. As a direct and proximate result of Defendants' conduct as described herein, HomeVestors has suffered and continues to suffer irreparable harm. Unless restrained by the Court, Defendants' acts will further impair the value of HomeVestors Ugly Houses Marks, HomeVestors' reputation, and the goodwill established in and accruing to the Ugly Houses Marks. HomeVestors has no adequate remedy at law to address or correct this irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, HomeVestors prays for a judgement in its favor and against Defendants and requests the following relief:

1. That Defendants, its officers, agents, servants, employees, and attorneys, and all parties in active concert or participation with any of them, be permanently enjoined from:

> (a) Engaging in any further acts of trademark infringement and unfair competition of HomeVestors' Ugly Houses Marks described herein above, in violation of both federal and state trademark and unfair competition laws and under the common law, including, using the HomeVestors' Family of Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendant's services;
>
> (b) Continuing to hold themselves out as affiliated;
>
> (c) Representing by words or conduct that Defendants are HomeVestors or affiliated to HomeVestors;

  (d)  Using, publishing or causing the use or publication of any signs, advertisements, promotional publications, designs, logos or other materials which use or display any of the HomeVestors' Family of Marks or confusingly similar marks and phrases;

  (e)  Using in any manner a name or mark that is identical or confusingly similar to any of the HomeVestors' Family of Marks; and

  (f)  Any other conduct which causes or is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection or association of the Ugly Houses Marks or any of HomeVestors' Family of Marks.

2. That an accounting and judgment be rendered against Defendants awarding:

  (a)  HomeVestors punitive damages to be determined at trial;

  (b)  Restitution and disgorgement of all ill-gotten gains unjustly obtained and retained by Defendants through the acts complained of here;

  (c)  All profits received from the rendering of real estate services offered or advertised in any manner by the use of the Ugly Houses Marks or designations confusingly similar thereto, either directly or indirectly or by implications or representations of affiliation or relationship with HomeVestors;

  (d)  Damages to be proven at trial or statutory damages including enhanced statutory damages for willful trademark infringement, unfair competition and false designation of the origin of goods, injury to business reputation, false advertising and dilution, and that such damages, where appropriate, be trebled;

  (e)  HomeVestors' attorneys' fees and costs; and

  (f)  Such other and further relief as the Court deems just and proper.

3. That Defendants be ordered to surrender for destruction any and all print or electronic emblems, signs, invoices, labels, prints, articles, and promotional and advertising materials of any kind in its possession or under its control bearing the Ugly Houses Marks or designations confusingly similar thereto; and

4. That HomeVestors be awarded such other and further relief as this Court may deem just and equitable under the circumstances.

Dated: March 22, 2016                          Respectfully submitted,

/s/ Adam C. Sherman
Adam C. Sherman (0076850)
Vorys, Sater, Seymour and Pease LLP
Great American Tower, Suite 3500
301 East Fourth Street
Cincinnati, Ohio  45202
Telephone:    (513) 723-4000
Facsimile:    (513) 723-4056

*Attorneys for Plaintiff*
*HomeVestors of America, Inc.*